**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

CHERYL CASTILLO,

     Plaintiff,

v.                                            Civ. No. 15-344 SCY/KK

VISTA MESA VILLA *et al.,*

     Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO COMPEL AND
PLAINTIFF'S MOTION FOR PROTECTIVE ORDER**

THIS MATTER comes before the Court on Defendants' Motion to Compel (Doc. 32), filed September 28, 2015, and Plaintiff's Motion for Protective Order (Doc. 38), filed October 15, 2015. The Court, having reviewed the parties' submissions and the relevant law, having heard counsel's arguments at a hearing on December 7, 2015, and being otherwise fully advised, FINDS that the motions are well taken in part, and hereby GRANTS them in part and DENIES them in part, as follows.

**I. Introduction and Procedural History**

In this action, Plaintiff Cheryl Castillo brings claims against Defendants Vista Mesa Villa and Showe Management Corporation for alleged violations of the New Mexico Uniform Owner-Resident Relations Act, N.M. Stat. Ann. § 47-8-1 *et seq.*, breach of a residential rental agreement, sex discrimination under the federal Fair Housing Act ("FHA"), due process violations under 42 U.S.C. § 1983, and defamation. (Doc. 1-4 at 8-15.) Plaintiff alleges that she was Defendants' tenant at Vista Mesa Villa Apartments, where she received public housing assistance pursuant to 42 U.S.C. § 1437f. (*Id.* at 2.) According to Plaintiff, Defendants wrongfully evicted her because she notified them that she had been sexually assaulted in her

apartment, and then falsely claimed to one or more collections and/or credit reporting agencies that she owed them $1,833 for repairs, cleaning, and back rent.  (*Id.* at 3-8, 10-12.)  Plaintiff claims that Defendants' wrongful actions prevented her from obtaining other subsidized housing and thus from reunifying with her young child, whom the New Mexico Children, Youth and Families Department ("CYFD") had previously removed from her custody.  (*Id.* at 7-8.)  Plaintiff seeks a declaratory judgment, injunctive relief, compensatory and punitive damages, civil penalties, and attorneys' fees.  (*Id.* at 15.)

In response to Plaintiff's allegations, Defendants claim that:  (a) Plaintiff breached her rental agreement with them by failing to notify them that her child was no longer living in her apartment, and by failing to timely pay for a damaged blind; (b) Defendants properly gave Plaintiff notice of intent to terminate her lease; (c) Plaintiff vacated her apartment mid-lease; and, (d) all of the charges Defendants referred to collections were proper.  (Doc. 14 at 3-4.)  Defendants further deny that Plaintiff ever notified them that she was sexually assaulted before they terminated her lease.  (Doc. 32 at 4.)  Defendants seek dismissal of this lawsuit and an award of attorneys' fees and costs.  (Doc. 5 at 19-20.)

Plaintiff filed this civil action in the Thirteenth Judicial District Court of the State of New Mexico on March 23, 2015, and Defendants removed it to this Court on April 24, 2015.  (Doc. 1 at 1; Doc. 1-3 at 1.)  On July 8, 2015, Defendants served a First Set of Interrogatories and Requests for Production on Plaintiff.  (Doc. 19.)  Plaintiff objected and responded to these requests on August 21, 2015.  (Doc. 22.)  Following an exchange of correspondence between counsel, on September 28, 2015, Defendants filed a motion to compel Plaintiff to fully respond to their discovery requests.  (Doc. 32 at 1; Doc. 32-1 at 1-5; Doc. 32-2 at 1-7.)  The parties also scheduled depositions in this matter, but subsequently vacated them when they were unable to

agree upon "ground rules for questioning." (Doc. 39 at 2.) Specifically, the parties were unable to agree regarding whether and to what extent Defendants should be permitted to question Plaintiff at her deposition about being sexually assaulted. (*See generally id.*) Plaintiff therefore filed a motion for a protective order on October 15, 2015. (Doc. 38.) The Court held a hearing on the parties' pending discovery motions on December 7, 2015[1], and took both Defendants' Motion to Compel and Plaintiff's Motion for Protective Order under advisement. (Tr. at 02:06-02:07.[2]) Having reviewed the parties' submissions and the relevant law, and having considered counsel's arguments at the hearing, the Court now finds that both motions are well taken in part, and should be granted in part and denied in part, as follows.

## II. Analysis

**A.    Defendants' Motion to Compel**

1.    <u>Disclosures under Local Rule 26.3</u>

In their motion, Defendants first argue that the Court should compel Plaintiff to "produce those disclosures required under D.N.M.LR-Civ. 26.3(d)" as part of her initial disclosures under Federal Rule of Civil Procedure 26(a). (Doc. 32 at 4.) Specifically, Defendants contend that Local Rule 26.3(d) requires Plaintiff to disclose her medical and mental healthcare providers and records from five years before the date of the incidents alleged in her complaint to the present, because she has sought damages for "extreme emotional distress," thereby placing her "physical or mental medical condition" at issue. (*Id.* at 3-4; Doc. 32-3 at 2.) Plaintiff, conversely, asserts that Local Rule 26.3(d) does not require her to provide the listed healthcare information as part of her initial disclosures, because the rule only requires a party to disclose this information if the

---

[1] In addition to the two discovery motions now before the Court, the Court also heard argument regarding Plaintiff's Motion to Compel. (Doc. 55.) The Court ruled on that motion at the hearing and by separate Order. (*Id.*)

[2] Citations to "Tr." are to the recording of the December 7, 2015 hearing on the parties' discovery motions, at ABQ-Pecos_20151207_102700.dcr.

3

party "may use [the information] to support its claims or defenses"; and, she does not intend to use any healthcare information to support her claims.  (Doc. 39 at 22.)

Local Rule 26.3(d) states:

> **Required Initial Disclosure.** In all cases in which the physical or mental medical condition of a party is an issue, the party whose condition is an issue must make a good faith effort to produce the following information that the disclosing party may use to support its claims or defenses, unless solely for impeachment:
>
> (1) a list of the name, address and phone number of any healthcare provider[s] . . . which have treated the party within the last five (5) years preceding the date of the occurrence set forth in the pleadings and continuing through the current date;
>
> (2) all records of such healthcare providers which are already in that party's possession; [and,]
>
> (3) for each healthcare provider, a signed authorization to release medical records form[.]

D.N.M.LR-Civ. 26.3(d).

According to its plain language, Local Rule 26.3(d) does not require disclosure of the listed healthcare information merely because a party's "physical or mental medical condition . . . is an issue." *Id.*  Rather, disclosure is required only if the disclosing party also "may use [the information] to support its claims or defenses." *Id.*  Amendments to Federal Rule of Civil Procedure 26 necessitated this limitation.  In 1993, Rule 26 was amended to require parties to make certain initial disclosures without a discovery request.  *See* Fed. R. Civ. P. 26(a), Advisory Committee Notes, 1993 Amendments.  In its 1993 iteration, Rule 26 required parties to provide the name and contact information "of each individual likely to have discoverable information relevant to disputed facts alleged with particularity in the pleadings" and "a copy of, or a description by category and location of, all documents, data compilations, and tangible things in the possession, custody or control of the party that are relevant to disputed facts alleged with particularity in the pleadings."  Fed. R. Civ. P. 26(a)(1)(A), (B) (amended 1993).  These

disclosures were required "[e]xcept to the extent otherwise stipulated or directed by order or local rule." *Id.* Thus, although the rule required broad initial disclosures, it also allowed each district court to modify the required disclosures—or even exempt cases from the disclosure requirement—by local rule. *See* Fed. R. Civ. P. 26, Advisory Committee Notes, 1993 Amendments. This Court opted to require the initial disclosures, with some exceptions. *See* D.N.M.LR-Civ. 26.3 (effective 1999) ("All provisions of Fed. R. Civ. P. 26 are applicable to actions in this District, unless specifically exempted by local rule.").

Rule 26 was amended again in 2000, and two of the amendments are particularly relevant here. First, the language allowing the district courts to modify disclosure requirements by local rule was deleted. *See* Fed. R. Civ. P. 26(a)(1)(A) & Advisory Committee Notes, 2000 Amendment. Thus, this amendment eliminated "the authority to alter or opt out of the national disclosure requirements by local rule, invalidating [rules] that purport to create exemptions from—or limit or expand—the disclosure provided under the national rule." Fed. R. Civ. P. 26(a)(1), Advisory Committee Notes, 2000 Amendments. This was done "to establish a nationally uniform practice." *Id.*

Second, the 2000 amendments narrowed the scope of the initial disclosures Rule 26 requires "to cover only information that the disclosing party may use to support its position." *Id.* Specifically, the 2000 amendments limit the requirement to initially disclose documents and witnesses to those documents and witnesses a party "may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i), (ii); *see Cummings v. Gen. Motors Corp.*, 365 F.3d 944, 953-54 (10th Cir. 2004) (under the 2000 amendments a party need not disclose witnesses or documents, whether favorable or unfavorable, that it does not intend to use), *abrogated on other grounds by Unitherm Food Sys. v. Swift-Eckrich, Inc.*, 546 U.S. 394 (2006). Necessarily, then, this Court

amended its local rule to add the "may use to support its claims or defenses" language to its corresponding disclosure requirements. *See* D.N.M.LR-Civ. 26.3(d) (effective 2002). Here, Plaintiff asserts that she does not intend to use the testimony or records of any healthcare providers to support her case. (Doc. 39 at 21-22.) Local Rule 26.3(d) does not (and cannot, due to the 2000 amendments to Rule 26) require the initial disclosure of healthcare information if a party will not use this information to support its claims or defenses. Accordingly, the rule does not require Plaintiff to initially disclose the information Defendants seek to compel. [3]

Defendants assert that Plaintiff should nevertheless be required to disclose the information listed in Local Rule 26.3(d), because they "are entitled to assess whether [Plaintiff's] claimed damages are causally related to the incident alleged in the complaint or some other factor"; and, they will be "severely prejudiced in having to defend against a damage claim for extreme emotional distress" without access to Plaintiff's healthcare records. (Doc. 45 at 11.) In so arguing, Defendants appear to overlook the distinction between initial disclosures and discoverable information. In holding that Local Rule 26.3(d) does not require Plaintiff to initially disclose her healthcare providers and records from five years before the incidents alleged in her complaint to the present, the Court neither addresses nor decides whether it would require Plaintiff to respond to discovery requests seeking this information under Federal Rules of Civil Procedure 33 or 34. Rather, the Court is simply holding that Plaintiff need not produce such information at the outset, automatically, and without a discovery request. For these reasons, Defendants' motion to compel Plaintiff to produce additional initial disclosures pursuant to Local Rule 26.3(d) will be denied.

---

[3] However, if the Court's ruling in Section II.A.3., *infra*, were to cause Plaintiff to change her position and decide that she may use healthcare records to support her claims, as Plaintiff suggests it could (Doc. 39 at 22), then she would be required to comply with Local Rule 26.3(d)'s disclosure requirements at the earliest opportunity.

2.      Interrogatory No. 5 and Requests for Production Nos. 7 and 11

Defendants next argue that the Court should compel Plaintiff to respond more fully to their Interrogatory No. 5 and Requests for Production Nos. 7 and 11.  (Doc. 32 at 4, 6.) Interrogatory No. 5 asks Plaintiff to "describe with specificity" any "contacts and/or communications" she had with the police regarding the incident in which she was sexually assaulted in her apartment in March 2014.  (Doc. 32-4 at 2.)  Request for Production No. 7, in turn, seeks documents from "any police department, EMS service, or other emergency responder" related to the assault.  (*Id.* at 7.)  Finally, Request for Production No. 11 seeks medical records "related to any treatment received" as a result of the assault.  (*Id.* at 8.)  Plaintiff objected that these requests are overburdensome, seek information not reasonably calculated to lead to the discovery of admissible evidence, and unduly violate her privacy.  (*Id.* at 2, 7, 8.) Nevertheless, she provided Defendants with the names of the police department and detective to whom she reported the assault, the date she made the report, and a copy of the police report generated as a result.  (*Id.* at 2, 7.)

The parties dispute the extent to which the March 2014 assault is relevant to Plaintiff's claims.  Plaintiff concedes that whether and when she notified Defendants of the assault are relevant to her FHA claims, but contends that nothing else about the assault is relevant to any of the parties' claims or defenses.  (Doc. 39 at 11-18; Doc. 48 at 5.)  Defendants, in turn, concede that they do not need to know the "details" of how the assault occurred, but contend that a number of other facts about the assault are discoverable, including its emotional impact on Plaintiff, and the medical and mental health treatment Plaintiff received as a result of it.  (Doc. 45 at 2-4, 6-7.)

As an initial matter, the Court agrees with both parties that whether, when, and in what circumstances Plaintiff notified Defendants of the March 2014 assault are directly relevant to Plaintiff's claims that Defendants terminated her lease because of the notification, and that the details of how the assault occurred are not.   Regarding the first point, Plaintiff claims that Defendants discriminated against her because of her sex in violation of the FHA, by terminating her lease with them because she notified them of the assault.   *See, e.g.*, *Dickinson v. Zanesville Metro. Housing Auth.*, 975 F. Supp. 2d 863, 872 (S.D. Ohio 2013) (Defendants' "apportionment of blame for the results of . . . domestic violence . . . could give rise to an inference that [defendant] acted with intent to discriminate on the basis of gender."); *Meister v. Kan. City*, 2011 WL 765887, at *6 (D. Kan. Feb. 25, 2011) ("[E]vidence that defendant knew that domestic violence caused damage to plaintiff's housing unit would help support a claim that she was evicted under circumstances giving rise to an inference of sex discrimination.").   Defendants deny that Plaintiff provided them with any such notification.   Thus, whether and when Plaintiff notified Defendants of the assault, and the circumstances in which she claims she did so, are centrally relevant to Plaintiff's FHA claims and proportional to the needs of the case.   Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.").

Conversely, details of how the March 2014 assault occurred, including but not limited to where it occurred, are simply not relevant to the parties' claims and defenses.   Plaintiff does not assert that Defendants are liable for the assault and seeks no damages arising from it (Doc. 39 at 12); and, Defendants do not dispute that the assault occurred, or otherwise rely upon whether, where, or how it occurred, to support any of their defenses.   (Doc. 45 at 7.)   Rather, as discussed above, what is relevant and disputed here is whether Plaintiff *notified* Defendants of the assault,

*i.e.*, whether Defendants knew or believed the assault occurred, and acted upon this knowledge or belief.  *Dickinson*, 975 F. Supp. 2d at 872; *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374 (1982) (agent may be liable to tester for false response to tester's inquiry regarding availability of housing even though "the tester may have approached the real estate agent . . . without any intention of buying or renting a home").  Further, although information about how the assault occurred may be marginally relevant to the extent to which the assault, rather than Defendants' conduct, caused Plaintiff's alleged emotional distress, the Court finds that the significant burden this discovery would impose on Plaintiff's privacy greatly outweighs its likely benefit, and that it need not be produced.  Fed. R. Civ. P. 26(b)(1) (in determining whether information is "proportional to the needs of the case," courts must consider, *inter alia*, "the importance of the discovery in resolving the issues, and whether the burden . . . of the proposed discovery outweighs its likely benefit").

Turning to the specific discovery requests at issue, it appears that the only information Interrogatory No. 5 seeks that Plaintiff has not already provided concerns communications Plaintiff had with the police regarding the March 2014 assault that are not documented in the police report.  In the rather unlikely event that this includes communications regarding whether, when, or how Plaintiff notified Defendants of the assault, the Court will compel Plaintiff to supplement her answer to this interrogatory to provide responsive information regarding such communications.  In all other respects, the Court finds that additional information regarding Plaintiff's communications with the police regarding the assault is not relevant and proportional to the needs of the case, and will deny Defendants' motion to compel Plaintiff to provide this information in response to Interrogatory No. 5.  Fed. R. Civ. P. 26(b)(1).

Regarding Requests for Production Nos. 7 and 11, the Court must next consider whether records regarding medical treatment Plaintiff received as a result of the March 2014 assault—excluding mental health records, which the Court will discuss in Section II.A.3., *infra*—are discoverable.  As an initial matter, the Court must determine what law to apply to determine whether these records may be privileged.  (Doc. 32 at 8-10.)  Federal common law governs claims of privilege regarding evidence relevant to federal claims.  Fed. R. Evid. 501.  Federal common law also governs claims of privilege regarding evidence relevant to both federal and state law claims brought in the same federal action.  *Vondrak v. City of Las Cruces*, 760 F. Supp. 2d 1170, 1175-77 (D.N.M. 2009).  Defendants argue that Plaintiff's records regarding medical treatment for the assault are relevant to her FHA claims and to her alleged emotional distress damages, which she seeks pursuant to both federal and state law claims.  (Doc. 32 at 7; Tr. at 00:43-00:45.)  Thus, the Court will apply federal common law to determine whether Plaintiff's medical records are privileged.

Federal common law does not recognize a physician-patient privilege, and Plaintiff's medical records regarding the assault are therefore not privileged.  *Vondrak*, 760 F. Supp. 2d at 1178 (citing cases).  Nevertheless, the Tenth Circuit has recognized that a patient has a privacy interest in her medical records.  *Kerns v. Bader*, 663 F.3d 1173, 1184 (10th Cir. 2011).  Moreover, records regarding any medical treatment Plaintiff received as a result of the assault are unlikely to throw any light on whether, when, or in what circumstances Plaintiff provided notice of the assault to her landlords.  Beyond the obviously tangential relationship between these two topics, Plaintiff has already conceded that she did not notify Defendants of the assault until "early May" 2014, over a month after she would have received emergency medical treatment for the assault.  (Doc. 1-4 at 26.)  Finally, although such treatment may, again, be

marginally relevant to the extent to which the assault caused Plaintiff's alleged emotional distress, the Court finds that the heavy burden this discovery would impose on Plaintiff's privacy greatly outweighs its likely benefit, and that it need not be produced.  Fed. R. Civ. P. 26(b)(1). In light of the foregoing, the Court will deny Defendants' motion to compel Plaintiff to respond to Requests for Production Nos. 7 and 11 more fully.

       3.       <u>Interrogatories Nos. 7 and 11, and Requests for Production Nos. 1, 2, 8, and 12</u>

Defendants next argue that the Court should compel Plaintiff to respond more fully to their Interrogatories Nos. 7 and 11[4] and Requests for Production Nos. 1, 2, 8, and 12[5]. Interrogatory No. 7 seeks a description of all written or recorded statements "regarding the liability or damages alleged" in the complaint.  (Doc. 32-4 at 3.)  Defendants also seek a copy of all such statements by way of Requests for Production Nos. 1 and 2, which seek "copies of all documents mentioned in any of the answers to Interrogatories," and "[a]ny and all witness statements . . . pertaining to any facts involved in this controversy."  (*Id.* at 5.)  Plaintiff objected that these requests are overbroad and overburdensome, and seek information protected by the attorney-client and psychotherapist-patient privileges.  (*Id.* at 3-5.)  Nevertheless, in answer to Interrogatory No. 7, Plaintiff generally identified responsive statements to five categories of auditors:  her mental healthcare providers, her attorneys, the Southwest Indian Foundation, CYFD representatives, and credit reporting agencies.  (*Id.* at 3-4.)  Plaintiff asserted that her

---

[4] Defendants failed to attach Interrogatory No. 11 and Plaintiff's response thereto to their motion to compel, in violation of Local Rule 37.1.  (Doc. 32-4); D.N.M.LR-Civ. 37.1 (Party filing motion to compel "must attach to the motion a copy of . . . the interrogatory [or] request for production . . . ; and, . . . the response or objection thereto."). As such, Defendants have failed to demonstrate that this interrogatory seeks relevant and discoverable information that Plaintiff has not provided, and the Court will deny Defendants' motion to compel Plaintiff to answer it.

[5] Request for Production No. 12 seeks a medical release "for any entity listed in response to Interrogatory No. 11." (Doc. 32-4 at 9.)  Again, Defendants failed to attach Interrogatory No. 11 and Plaintiff's response thereto to their motion to compel, in violation of Local Rule 37.1.  As such, Defendants have failed to show that this request for production seeks relevant and discoverable documents that Plaintiff has not produced, and the Court will deny Defendants' motion to compel Plaintiff to respond to it.

statements to the first two categories of auditors are privileged, and additionally noted that CYFD records are sealed and may not be released without court approval.  (*Id.*)  Subject to these objections, Plaintiff produced six pages of documents in response to Request for Production No. 1, and stated that she possesses no documents responsive to Request for Production No. 2.

The Court finds that Interrogatory No. 7 is facially overbroad and overburdensome, which justifies Plaintiff's failure to produce the detailed privilege log Defendants seek in their motion to compel.  (Doc. 32 at 6-7.)  This interrogatory is a "catch-all" request, seeking every single statement made by anyone at any time regarding anything to do with Plaintiff's complaint, including numerous statements that are obviously privileged.  In particular, requiring Plaintiff to log with particularity each and every responsive confidential communication between her and her attorneys would be both overburdensome and pointless, because Defendants have failed to identify any possible basis on which Plaintiff may have waived the attorney-client privilege protecting such communications.  Thus, the Court will require Plaintiff to produce neither the attorney-client communications themselves nor a detailed log of them.

However, the issues presented by responsive statements between Plaintiff and her mental healthcare providers are more complex.  Federal common law recognizes a psychotherapist-patient privilege protecting confidential communications between a patient and her mental healthcare providers.[6]  *Jaffee v. Redmond*, 518 U.S. 1, 10 (1996).  The *Jaffee* Court acknowledged that a patient can waive the psychotherapist-patient privilege, but did not discuss how she might do so.  *Id.* at 15 n.14.  Since *Jaffee*, however, "[t]he issue of waiver of the psychotherapist-patient privilege [has] arise[n] frequently in civil litigation when the plaintiff

---

[6] For the reasons discussed in Section II.A.2., *supra*, the Court will apply federal common law to Plaintiff's claim that her mental health records are privileged, because these records are relevant to Plaintiff's alleged emotional distress damages, which she seeks pursuant to both federal and state law claims.  (Tr. at 00:43-00:45); *Vondrak*, 760 F. Supp. 2d at 1175-77.

claims damages for emotion[al] distress." *Awalt v. Marketti*, 287 F.R.D. 409, 417 (N.D. Ill. 2012).

> Federal courts faced with this issue have developed divergent approaches for ascertaining whether the privilege has been waived. The so-called "narrow" approach holds that a patient only waives the privilege by putting the substance of the advice or communication with their psychotherapist directly at issue in the suit. Courts employing the "narrow" approach will only find a waiver of the privilege where the emotional distress claims are "severe," where the plaintiff relies on communications with a therapist as part of [her] case, or where the plaintiff intends to offer expert testimony on the claim of emotional distress. On the other side of the spectrum, under the so-called "broad" approach, courts have held that a plaintiff places [her] mental condition at issue and waives the privilege simply by making a claim for emotional distress damages. Courts employing the "broad" approach will find a waiver of the privilege merely from the plaintiff putting [her] emotional state at issue in the litigation. There is a final approach, the so-called "middle ground" approach – which has become the majority view – which holds that where a plaintiff merely alleges "garden variety" emotional distress and neither alleges a separate tort for the distress, [nor] any specific psychiatric injury or disorder, [nor] unusually severe distress, that plaintiff has not placed [her] mental condition at issue to justify a waiver of the psychotherapist-patient privilege.

*Id.* at 417 (collecting cases) (citations and internal quotation marks omitted); *cf. Dixon v. City of Lawton*, 898 F.2d 1443, 1450-51 (10th Cir. 1990) (holding, pre-*Jaffee*, that there is no psychotherapist-patient privilege "as to communications relevant to an issue of the mental or emotional condition" of a party where the party "relies upon the condition as an element of his claim or defense").

The middle-ground approach has required courts to define the term "garden variety emotional distress," which they have done in a variety of ways, including:

> the distress that any healthy, well-adjusted person would likely feel as a result of being so victimized; the generalized insult, hurt feelings and lingering resentment which anyone could be expected to feel given the defendant's conduct; the normal distress experienced as a result of the claimed injury; the negative emotions that plaintiff experienced essentially as the intrinsic result of the defendant's alleged conduct, but not the resulting symptoms or conditions that she might have suffered; the generalized insult, hurt feelings, and lingering resentment that does not involve a significant disruption of the plaintiff's work life and rarely involves

> more than a temporary disruption of the claimant's personal life; the ordinary or commonplace, simple or usual; those that do not involve psychological treatment or adversely affect any particular life activities; those where the plaintiff describes his or her distress in vague or conclusory terms, but does not describe their severity or consequences; or those that involve the general pain and suffering and emotional distress one feels at the time of the complained-of conduct, but not any ongoing emotional distress.

*Flowers v. Owens*, 274 F.R.D. 218, 225-26 (N.D. Ill. 2011) (collecting cases) (citations and internal quotation marks omitted).

In their motion to compel, Defendants ask the Court to find that Plaintiff has waived the psychotherapist-patient privilege simply because she seeks damages for emotional distress, thereby putting her mental condition at issue.  (Doc. 32 at 8-9.)  In other words, Defendants advocate for the Court to apply the broad approach.  Plaintiff, in contrast, argues that the Court should apply the middle-ground approach, and contends that she has not waived the psychotherapist-patient privilege because she only seeks damages for garden variety emotional distress.  (Doc. 39 at 18-22; Tr. at 00:07.)  However, the Court need not choose between these two approaches, because the emotional distress Plaintiff has alleged is not "garden variety," and would result in a waiver of privilege under either of them.

As Defendants observe, Plaintiff in her initial disclosures indicated that she seeks compensatory damages for "*extreme* emotional distress."  (Doc. 32-3 at 2 (emphasis added).)  On its face, extreme emotional distress is distinct from garden variety emotional distress.  *See St. John v. Napolitano*, 274 F.R.D. 12, 19-20 (D.D.C. 2011) ("unusually severe emotional distress" is not garden variety emotional distress).  Moreover, as noted above, garden variety emotional distress does not encompass the "consequences" of the distress, "rarely involves more than a temporary disruption of the claimant's personal life," and "do[es] not . . . adversely affect any particular life activities."  *Flowers*, 274 F.R.D. at 225-26.  Here, however, Plaintiff intends to

present evidence that her emotional distress had serious consequences and significantly disrupted her personal life by adversely affecting her behavior.  Specifically, at the December 7, 2015 hearing on this matter, Plaintiff's counsel indicated that Plaintiff will likely testify not only to how Defendants' actions made her feel, but also to how her feelings affected her subsequent actions, *inter alia*, causing her to fail to comply with her CYFD treatment plan.  (Tr. at 00:01-00:08; 00:12-00:17; 00:19-00:22.)  Such evidence clearly exceeds garden variety emotional distress and results in a waiver of the psychotherapist-patient privilege under both the broad and middle-ground approaches.

As an additional basis for waiver of this privilege, the Court finds that Plaintiff has put her mental health records at issue by claiming that Defendants' actions caused CYFD to retain custody of her young child.  As an element of her damages, Plaintiff contends that Defendants' actions prevented her from obtaining other subsidized housing, which in turn prevented CYFD from returning her child to her custody.  (Tr. at 00:22-00:30; *see also* Doc. 32-3 at 2.)  More particularly, Plaintiff contends that at one time she had complied with all of CYFD's requirements except the requirement to obtain stable housing, and that CYFD would have decided to return her child to her if Defendants' actions had not prevented her from meeting that requirement.  (*Id.*)  As such, Plaintiff has put directly at issue whether she had at some point met all of CYFD's non-housing requirements.

Plaintiff suggests that to return her child to her custody, all CYFD would have required of her is compliance with her treatment plan items, including mere attendance at mental health counseling.  (Tr. at 00:25-00:29.)  In fact, however, by law CYFD would have also had to determine that the state of Plaintiff's mental health would allow her to safely care for her child. *See State ex rel. Children, Youth & Families Dep't v. Athena H.*, 2006-NMCA-113, ¶ 9, 142

P.3d 978, 140 N.M. 390 (affirming termination of parental rights where mother complied with treatment plan items but could not safely parent her children, *inter alia*, because of ongoing "psychological infirmities").  To support her prediction that CYFD would have made this determination if she had had housing, Plaintiff must necessarily rely on records and/or testimony regarding what CYFD knew about her mental health diagnoses, prognosis, and progress in counseling at the relevant time.  In fairness, this must result in a waiver of the psychotherapist-patient privilege protecting all of the records CYFD would have considered before deciding to return Plaintiff's child to her care, and not merely those records tending to support Plaintiff's prediction.[7]  *Adams v. Ardcor*, 196 F.R.D. 339, 343 (E.D. Wis. 2000) (party cannot rely on supportive mental health evidence but keep detrimental mental health evidence confidential).

For all of the above reasons, the Court concludes that Plaintiff has waived the psychotherapist-patient privilege by putting confidential communications between herself and her mental healthcare providers at issue, first, by alleging considerably more than garden variety emotional distress, and second, by alleging that Defendants' actions, and not her mental health status, prevented CYFD from returning her child to her custody.  Thus, the Court will compel Plaintiff to produce statements between her and her mental healthcare providers, to the extent that they are responsive to Interrogatory No. 7 and Requests for Production Nos. 1 and 2.[8]

---

[7] The Court's determination that Plaintiff has waived the psychotherapist-patient privilege by relying on CYFD records and/or testimony regarding her mental health would be the same under New Mexico law.  *See* N.M. R. Evid. 11-504(D) ("If a patient relies on a physical, mental, or emotional condition as part of a claim or defense, no privilege shall apply concerning confidential communications made relevant to that condition."); *Gingrich v. Sandia Corp.*, 2007-NMCA-101, ¶¶ 14-15, 165 P.3d 1135 (waiver of privilege occurs when a party directly relies on a privileged communication to advance a claim or defense); *id.*, ¶ 21, 165 P.3d 1135 ("The decision of whether . . . waiver [of a privilege] applies only to the actual communication disclosed or to additional communications that substantively relate to it is a discretionary one, based upon the judge's assessment of what is fair under the circumstances.").  Thus, the Court's ruling on this portion of Defendants' motion to compel would be the same whether federal or state law governed Plaintiff's claim of privilege.

[8] To the extent Plaintiff believes that N.M. Stat. Ann. § 32A-4-33 restricts the release of any such statements, Plaintiff should take whatever steps are necessary to comply with the statute's requirements so that she may lawfully produce them to Defendants.

The foregoing analysis makes clear that Defendants' Request for Production No. 8, which asks for CYFD documents related to Plaintiff's child's removal in April 2014, also seeks relevant and discoverable information.  (Doc. 32-4 at 7.)  Plaintiff objected that this request seeks irrelevant information and unduly invades her privacy, and observed that she cannot produce these documents without the Thirteenth Judicial District Court's approval.  (*Id.* (citing N.M. Stat. Ann. § 32A-4-33).)  However, by alleging that Defendants are responsible for her prolonged separation from her child, Plaintiff has put these documents directly at issue in this litigation. The Court will therefore overrule Plaintiff's objections and require her to seek the state court's leave to produce such documents to Defendants.  The Court notes the parties' stated intention to enter into a stipulated confidentiality agreement to protect these records, which agreement will permit disclosure to Defendants' adjustors and managerial employees in Columbus, Ohio, but not to Defendants' employees in Grants, New Mexico, or to the public, without this Court's leave.  (Tr. at 00:57-00:58.)  Because these records will be kept confidential, the Court will reject Plaintiff's request that information regarding her child and the child's other parent be redacted. (Doc. 38 at 2.)  Should the Thirteenth Judicial District Court impose such a requirement as a condition of permitting the production of these records, Plaintiff is to file an appropriate motion in this action.  With these limitations, the Court will grant Defendants' motion to compel Plaintiff to respond to Request for Production No. 8.

    4.    <u>Request for Production No. 3</u>

Finally, Defendants assert that the Court should compel Plaintiff to respond more fully to their Request for Production No. 3, which seeks any "graphic representation[s]" that "relate to the liability, injuries or damages described in the Complaint."  (Doc. 32-4 at 5.)  Plaintiff objected to this request on the basis of the attorney-client and psychotherapist-patient privileges,

17

and stated that "subject to . . . these objections," she "is unaware at this time of any responsive documents in her possession." (*Id.* at 5-6.) Plaintiff's response to this request is problematic because it leaves open the possibility that she may possess responsive documents that she is withholding on a claim of privilege.

Given the limited number of privileged documents that are likely to be responsive to this request, the Court agrees with Defendants that Plaintiff should produce a privilege log of any responsive documents in her possession that she has withheld on a claim of privilege. (Doc. 32 at 6-7); Fed. R. Civ. P. 26(b)(5); *Kannaday v. Ball*, 292 F.R.D. 640, 645 (D. Kan. 2013); *Anaya v. CBS Broad., Inc.*, 251 F.R.D. 645, 651 (D.N.M. 2007). This privilege log should include the following information as to each listed item: (a) the item's title, if any; (b) the type of item, *e.g.*, a photograph, a video, or a diagram; (c) the date(s) on which the item was created; (d) the date(s) on which the item was transmitted to its intended recipients, if different; (e) the identity of all person(s) who created the document, and each such person's employer and job title; (f) the identity of all person(s) who received the item, and each such person's employer and job title; (g) the purpose(s) for preparing the item; and, (*i*) the specific privilege(s) and protection(s) being asserted as to the item. *Kannady*, 292 F.R.D. at 645. Defendants may renew their motion to compel a more complete response to this request should Plaintiff's privilege log reveal a valid basis for asserting either that withheld items are not privileged, or that Plaintiff has waived the claimed privilege(s) as to withheld items.

**B.     Plaintiff's Motion for Protective Order**

In this motion, Plaintiff seeks a protective order prohibiting Defendants from asking Plaintiff questions at her deposition "about being sexually assaulted on March 29, 2014, or her medical or mental health treatment related to the assault." (Doc. 38 at 1.) Plaintiff also seeks a

protective order "providing for, and setting forth the scope of, the production of CYFD records, in the event that the [Thirteenth] Judicial District Court presiding over the CYFD case permits their disclosure." (*Id.* at 2.)

As to the first issue, the Court has already determined, in Section II.A.2. *supra*, that the details of how the March 2014 assault occurred, as well as information regarding Plaintiff's medical treatment related to the assault, are not discoverable. Fed. R. Civ. P. 26(b)(1). The Court therefore finds that a protective order prohibiting deposition questions regarding the details of, and Plaintiff's medical treatment related to, the March 2014 assault is necessary to protect Plaintiff from annoyance, embarrassment, oppression, and undue burden, and will issue such an order. Fed. R. Civ. P. 26(c)(1). However, for the reasons discussed in Section II.A.3., *supra*, the Court finds that questions regarding the emotional impact of the assault on Plaintiff, and any mental health treatment and diagnoses she received as a result, are relevant and discoverable, and that Plaintiff has waived the psychotherapist-patient privilege protecting such information by putting at issue both her extreme emotional distress and the reasons for her child's remaining in CYFD custody. The Court will therefore deny Plaintiff's motion for protective order prohibiting Defendants from asking Plaintiff questions about these topics at her deposition.

Finally, at the December 7, 2015 hearing on the parties' pending discovery motions, counsel indicated that the parties have resolved their dispute as to the production of CYFD records. (Tr. at 00:57-00:58.) As such, the Court will deny that portion of Plaintiff's Motion for Protective Order as moot.

IT IS THEREFORE ORDERED as follows:

1.    Defendants' Motion to Compel (Doc. 32) is GRANTED IN PART and DENIED IN PART.

a.    The motion is denied as to Plaintiff's initial disclosures pursuant to Local Rule 26.3;

b.    The motion is granted in part and denied in part as to Interrogatory No. 5.  If Plaintiff communicated with the police regarding whether, when, or how she notified Defendants of the March 2014 assault, Plaintiff is ordered to supplement her answer to this interrogatory to include responsive information about such communications.  In all other respects, Defendants' motion to compel Plaintiff to provide a more complete answer to Interrogatory No. 5 is denied.

c.    The motion is denied as to Requests for Production Nos. 7 and 11.

d.    The motion is denied as to Interrogatory No. 11 and Request for Production No. 12.

e.    The motion is granted in part and denied in part as to Interrogatory No. 7 and Requests for Production Nos. 1, 2, and 8.  Regarding statements responsive to Interrogatory No. 7 and Requests for Production Nos. 1 and 2:  (1) the motion is denied as to statements protected by the attorney-client privilege; (2) the motion is granted as to statements between Plaintiff and her mental healthcare providers; and, (3) the motion is granted as to statements to CYFD representatives.  The motion is also granted as to CYFD documents responsive to Request for Production No. 8.  Plaintiff is ordered to seek leave of the Thirteenth Judicial District Court of New Mexico to produce such documents to Defendants.

f.    The motion is granted in part and denied in part as to Request for Production No. 3.  Plaintiff is ordered to produce a privilege log describing with particularity any documents responsive to this request that she has withheld on a claim of privilege.

2.      Plaintiff's Motion for Protective Order (Doc. 38) is GRANTED IN PART and DENIED IN PART as follows:

    a.      The motion is granted in that Defendants are prohibited from asking Plaintiff questions, at her deposition, regarding the details of how the March 2014 assault occurred, and regarding any medical treatment (excluding mental health treatment) she received as a result of the assault.

    b.      The motion is denied in that Defendants may ask Plaintiff questions, at her deposition, regarding:  (1) whether, when, and in what circumstances she notified Defendants of the March 2014 assault; (2) the emotional impact of the assault on Plaintiff; and, (3) any mental health diagnoses and treatment she received as a result of the assault.

    c.      The motion is denied as moot regarding the production of CYFD records, counsel having stated on the record that they have reached an agreement regarding this issue.

IT IS FURTHER ORDERED that Plaintiff is to serve supplemental discovery responses and a privilege log as set forth herein on Defendants' counsel within twenty-one (21) days of entry of this Order.

IT IS SO ORDERED.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE